1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
9                                AT TACOMA

10

11    METRO WEST AMBULANCE,                    CASE NO. C10-5809RJB

                    Plaintiff,                 ORDER ON MOTIONS FOR
12                                             SUMMARY JUDGMENT

13            v.

14    CLARK COUNTY, WASHINGTON, a
      municipal corporation; CLARK
15    COUNTY BOARD OF
      COMMISSIONERS, being Tom Mielke,
16    Marc Boldt, and Steve Stuart, in their
      official capacities as current
17    commissioners of Clark County; and
      CLARK COUNTY EMERGENCY
18    MEDICAL SERVICES DISTRICT NO.
      2, an emergency medical services district,
19
                    Defendants.
20
            The matter comes before the court on the parties' motions and cross motions for
21
      summary judgment.  Dkt. 58, 66, 71, 72, and 74.  The court has reviewed and considered all of
22
      the pleadings filed by the parties and the remainder of the file herein, and is fully advised.
23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 1

## INTRODUCTION

It appears that this case involves two ambulance companies fighting about money, and dragging Clark County and the City of Vancouver into that fight.

## PROCEDURAL HISTORY

On November 5, 2010, plaintiff Metro West Ambulance (Metro West) filed a complaint for declaratory judgment and injunctive relief against (1) Clark County, Washington, and the Clark County Board of Commissioners, being Tom Mielke, Marc Boldt, and Steve Stuart, in their official capacities as current commissioners of Clark County (collectively referred to as Clark County); and the Clark County Emergency Medical Services District No. 2.  Dkt. 1.

On March 22, 2011, Metro West filed a First Amended Complaint for Declaratory Judgment.  Dkt. 28.

On April 12, 2011, Clark County filed an answer and a counterclaim, seeking an injunction to prevent Metro West from providing non-emergency ambulance service within the regulated service area of Clark County, without complying with the Clark County Code.  Dkt. 32.

On March 25, 2011, the court granted the motion of American Medical Response to intervene as a defendant.  Dkt. 30.  On April 25, 2011, the then-existing parties stipulated to intervention by the City of Vancouver (Dkt. 33); although the City of Vancouver did not file a formal motion to intervene, the city has filed pleadings and has apparently acquiesced to status as a party defendant.

## AMENDED COMPLAINT

In the amended complaint, Metro West makes the following claims regarding Clark County Code Section 5.48A.025 (EMS Ordinance):  (1) Federal law preempts the EMS

Ordinance  because it conflicts with federal antitrust policy, is a hybrid restraint of trade, and

constitutes a *per se* violation of the Sherman Act. 15 U.S.C. § 1 et al.;  (2) Metro West's

provision of ambulance/emergency services pursuant to its contract with the VA Medical Centers

preempts the EMS Ordinance;  and (3) the EMS Ordinance violates the Commerce Clause of the

United States Constitution, Article I, Section 8, Clause 3, because the EMS Ordinance directly

regulates interstate commerce, burdens interstate commerce, increases health care costs, and

decreases access to specialized health care services for Clark County patients.  Dkt. 28.  The

amended complaint requests declaratory and injunctive relief.  Dkt. 28, at 16-17.

On April 12, 2011, Clark County filed an answer and asserted a counterclaim, requesting

a permanent injunction, enjoining Metro West from providing non-emergency ambulance service

within the regulated service area of Clark County, without complying with the Clark County

Code.  Dkt. 32, at 7.

## PROCEDURAL BACKGROUND AND RELEVANT FACTS

**The Parties**.  Clark County is a municipal corporation under the laws of Washington.

The Clark County Board of Commissioners provides legislative authority for Clark County.  The

three current members of the Board of Commissioners are Tom Mielke, Marc Boldt, and Steve

Stuart.  Clark County Emergency Medical Services District No. 2 (hereafter the District) is an

emergency medical service district under RCW 36.32.480 ("A county legislative authority may

adopt an ordinance creating an emergency medical service district in all or a portion of the

unincorporated area of the county, and … within the corporate limits of any city or town….").

The District covers Clark County and the City of Vancouver.

**Federal Lawsuit.**  In 1987, the Clark County Board of Commissioners created the

District.  The commissioners found that creation of this district was necessary for the protection

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 3

of public health, safety and welfare. By 1990, the Board determined that additional changes were

necessary, and adopted Ordinance 1990-07-303 to establish oversight and regulatory standards

for the provision of pre-hospital emergency medical services. This ordinance required a license

for all providers of emergency medical services and imposed standards regulating issuance of

licenses. Service providers were required to respond to calls within 4-60 minutes depending on

the remoteness of the area, and ambulances were required to be appropriately staffed based on

status from "Basic Life Support" to "Advanced Life Support".

In 1991, an antitrust suit was filed in Federal Court, alleging that Clark County's system

of allocation of ambulance service between two ambulance providers violated the Sherman Act.

*Buck Medical Services, Inc. v. Clark County, et al.* C91-5229B.   The Clark County Board of

Commissioners, on behalf of the District, faced with the antitrust allegations, adopted resolution

1991-06-1 to both provide emergency medical services based on a competitive selection process

and to assign interim services in a fashion to minimize disruption of services. The Clark County

Board of Commissioners found and concluded that the county should be divided between the two

providers: Buck Medical Services, an Oregon corporation; and American Ambulance, provided

that the federal court conclude that the District possessed the authority to allocate calls and that

such actions and its competitive process did not violate antitrust laws. Finally the Board

authorized the District to petition for intervention and to authorize other cities to join the District

by interlocal agreement.

The federal lawsuit proceeded until October 11, 1991, when the court approved a

Settlement Agreement and an entered an agreed order of dismissal.  Dkt. 69-5.

The Settlement Agreement referenced EMS District Resolution No. 1991-06-01, which

provided that 911 medical request calls would be allocated to one EMS provider selected

1   pursuant to an open, competitive process; and provided an interim allocation until the single

2   source provider could be selected.  Dkt. 69-5, at 9.  The Settlement Agreement provided that the

3   Resolution "was contingent upon this Court's upholding the authority of the EMS District to

4   implement the Resolution and the validity of the Resolution under federal antitrust law."  Dkt.

5   69-5, at 9.

6          The Settlement Agreement included a copy of Resolution M-2744, adopted by the

7   Vancouver City Council on September 16, 1991, which found, among other things, that existing

8   private ambulance service in Vancouver would become inadequate under RCW 35.21.766 if the

9   EMS District were served by a single contract EMS provider while Vancouver were served by

10  one of more EMS providers under a different system. Dkt. 69-5, at 10.

11         The Settlement Agreement included the following provision:

12         WHEREAS, Clark County, the EMS District and Vancouver have the authority under
           federal and Washington State law to undertake the actions described in this Settlement
13         Agreement, and such actions are valid under federal antitrust laws….

14  Dkt. 69-5, at 11.

15         On October 10, 1991, the parties sent a letter to the undersigned judge, stating in relevant

16  part as follows:

17              Because substantial taxpayer revenues and County and City resources are
           necessary to implement the single provider system and interim reallocation measures
18         called for by the Settlement Agreement, Clark County, the City of Vancouver, and the
           EMS District seek to obtain the Court's approval of the settlement terms prior to
19         expending these sums and resources.

20  Dkt. 69-6, at 3.

21         The Settlement Agreement also included the procedure for an open competitive process

22  that may be for  911 calls only, or the process may include the entire market including both 911

23  calls and calls for "assumed" routine transport services. Dkt. 69-5, at 19-20.

24

1        On October 11, 1991, the court approved the Settlement Agreement and dismissed the

2   action.  Dkt. 69-5, at 2-3.

3        **Emergency Medical Service.**  Clark County Code Section 5.48A covers the provision of

4   Emergency Medical Services within the District.

5        " 'Emergency medical service' means medical treatment and care which may be rendered

6   at the scene of any medical emergency or while transporting any patient in an ambulance to an

7   appropriate medical facility, including ambulance transportation between medical facilities."

8   RCW 18.73.030(9).

9        Washington State law governs authority of local governments related to provision of

10  emergency medical service.

11       **Ambulance Services**.  The EMS Ordinance covers provision of ambulance services in

12  the district.

13       " 'Ambulance' means a ground or air vehicle designed and used to transport the ill and

14  injured and to provide personnel, facilities, and equipment to treat patients before and during

15  transportation."  RCW 18.73.030(4).

16       Washington State law governs authority of local governments concerning ambulance

17  services.

18       RCW 36.01.100 provides the authority for counties, as it relates to ambulance services:

19            The legislative authority of any county may by appropriate legislation provide for
    the establishment of a system of ambulance service for the entire county or for

20            portions thereof, and award contracts for ambulance services: PROVIDED, That
    such legislation may not provide for the establishment of any system which would

21            compete with any existing private system.

22       RCW 36.01.095 provides as follows:

23            Any county may establish a system of emergency medical services as defined by
    [RCW 18.73.030 was amended by 2000 c 93 § 16, changing subsection (11) to

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 6

subsection (9).] RCW 18.73.030(11). The county legislative authority may adopt by resolution procedures to collect reasonable fees in order to reimburse the county in whole or in part for its costs of providing such service: PROVIDED, That any county which provides emergency medical services supported by an excess levy may waive such charges for service: PROVIDED FURTHER, That whenever the county legislative authority determines that the county or a substantial portion of the county is not adequately served by existing private ambulance service, and existing private ambulance service cannot be encouraged to expand service on a contract basis, the emergency medical service that is established by the county shall not be deemed to compete with any existing private ambulance service as provided for in RCW 36.01.100.

RCW 35.21.766 provides the authority for cities and towns, as it relates to ambulance services:

Whenever the legislative authority of any city or town determines that the city or town or a substantial portion of the city or town is not adequately served by existing private ambulance service, the legislative authority may by appropriate legislation provide for the establishment of a system of ambulance service to be operated as a public utility of the city or town or operated by contract after a call for bids.

**EMS Ordinance.** Clark County Code Section 5.48A.025 provides as follows:

Exclusive ambulance service provider.

Except as provided for in Section 5.48A.110, no person or entity shall provide ambulance service for either emergency and nonemergency transport of ambulance patients (language specific to county "within the regulated service area" unless under contract to do so with the district. (Sec. 2 of Ord. 1995-04-04; amended by Exh. A of Res. 2003-04-23)

Dkt. 60, at 5.

Clark County Code Section 5.48A.100 contains eight exemptions from the provisions of Section 5.48A. Dkt. 60, at 8. Three of those exemptions are relevant here.

B.  Vehicles owned or controlled by the United States government;

* * * * * * * *

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 7

F.  Persons or vehicles providing ambulance service for patient transports originating outside the regulated service area or nonstop patient transports through the regulated service area.

* * * * * * * *

H.  Persons or vehicles providing non-911 ambulance service for inter-county patient transports originating inside the regulated service area in excess of thirty (30) loaded miles.

Dkt. 60, at 8 and 9.

Violation of the EMS Ordinance constitutes a misdemeanor punishable upon conviction by not more than one year in jail and/or a fine not to exceed $5,000.  Clark County Code 5.48A.240; Dkt. 60, at 11.

The City of Vancouver VMC 5.84.015 states:  "Except as provided for in VMC 5.84.110, no person or entity shall provide ambulance service for either emergency or nonemergency transport of ambulance patients within the city limits of Vancouver unless under contract to do so with the district."  VMC 5.84.110(2) provides that the chapter does not apply to "Vehicles owned or controlled by the United States Government".

**Contract between the District and American Medical Response.**   Following dismissal of *Buck Medical Services. v. Clark County,* Clark County, in compliance with the Settlement Agreement, received requests for proposals from both providers. Following execution of an agreement with Buck Medical, the County adopted Ordinance 1992-06-26. The first ambulance agreement was limited to 911 services and contained specific response times for emergency calls, penalties for non-compliance, a required performance bond sufficient to allow the county to take over in the event of a default, a rental agreement that would allow the county to take over facilities and equipment. Access to the non-emergency market was open to American Ambulance.

By 1995, following a joint city/county/District work session that included an anti-trust legal analysis, the City of Vancouver and Clark County determined that the public was at risk under the then-current system, and that the public was best served by a unified system of ambulance service. The District requested proposals from all providers wishing to provide exclusive ambulance service for both 911 and non-emergency transport. A new Request for Proposal was issued in 2004.

On June 24, 2004, Clark County, through the District, entered into a contract with American Medical Response.  Dkt. 61, at 2-87.  The contract ran from June 29, 2004 through 2010.  The contract has been extended to 2014.

The contract states that American Medical Response "is the winner of a competitive allocation of ambulance service market rights and responsibilities, conducted by the District in accordance with the terms of Settlement Agreement No. C91-5229B[.]".  Dkt. 61, at 5.

The contract includes a rationale, as follows:

SECTION III.  FAIL SAFE FRANCHISE MODEL DESIGN RATIONALE

Competition Within the Market Has Proven Ineffective.  The historical track record of the ambulance industry conclusively reveals that retail competition *within* a geographic market fails to provide and reward efficient production of quality patient care due to the following economic distortions:

1.  Emergency victims have little opportunity and less inclination to "comparison shop" for ambulance services at the time service is required;

2.  Even where multiple firms operate within the same area, few potential ambulance service customers prepare to be effective buyers in their moment of need, by comparing services and costs of suppliers in advance;

3.  The typical consumer of ambulance services purchases such services too infrequently (i.e., about twice in a lifetime) to develop skills as a shrewd and experienced buyer of ambulance services;

4.  Ambulance services are becoming increasingly sophisticated, both clinically and technologically, to an extent that few customers are able to make useful distinctions in quality of patient care.

5.  Persons dialing 911 in a medical emergency have no opportunity to choose from among competing suppliers of ambulance service, have no way of knowing which firm's ambulance is nearest their location and staffed and equipped for their needs, and thus cannot reasonably be expected to choose from a selection of available firms;

6.  The retail market transaction is often rendered economically ineffective because the person choosing the ambulance company is neither the patient nor the payer;

7.  Unlike other health care services, the primary cost of ambulance service is the cost of providing geographic coverage, which cost  is only increased when multiple firms must duplicate coverage of the same geographic area; and

8.  Economies of scale in ambulance service industry are such that the total population of the Contract Service Area is inadequate to support the economically stable delivery of totally or substantially unsubsidized paramedic ambulance services delivered at reasonable rates, if fee-for-service income must support the fixed costs and overhead of multiple firms.  Thus, dividing the Contract Service Area into two or more zones for allocation among two or more firms is not in the public interest, clinically or economically.

Competition for the Market Can Be a Powerful and Positive Force. Experience of communities across the U.S. has shown conclusively that, although effective use of competitive market allocation is among the most complex of all procurements, managed competition for the market has reliably generated the EMS industry's highest levels of clinical  and response time reliability at costs (subsidies and fee structures combined) far below those of systems which have eliminated competition entirely (i.e., socialized systems), and below those of systems depending on retail competition within the market.  Thus, this process involves a competitive "group purchase" of ambulance services on behalf of the residents of the "Contract Service Area."

Dkt. 61, at 16-17.  *Emphasis in the original.*

Under the contract, American Medical Response is "awarded exclusive rights and responsibilities for provision of all 911 and 'Routine Transfer' ambulance service originating

1  within the Contract Service Area, for an initial term of s (6) years with the possibility of up to

2  three (3) 'earned' two (2) year extensions."  Dkt. 61, at 16.

3          The contract further provides as follows:

4          A.  EXCLUSIVE MARKET RIGHTS.  The Contractor is awarded exclusive
           market rights (911) and "Routine Transfer"), for provision of all ground
5          ambulance services originating within the Contract Service Area, regardless of
           whether the patient's destination is within or outside the State of Washington,
6          subject to the following exceptions:

7              1. Long-Distance, Inter-County Transports.  Other firms may compete
               with the Contractor on a retail basis for the sale of inter-county ambulance
8              transports originating within the Contract Service Area involving "Routine
               Transfers" more than 30 loaded miles.
9
               2. VA Contractors.  Ambulances operating under federal contract for
10             direct purchase of ambulance services (e.g., VA contracts) shall be exempt
               from provisions of exclusivity.  For purposes of this provision, Medicare
11             and Medicaid provider agreements shall be considered a reimbursement
               arrangement—not a federal contract for direct purchase of ambulance
12             services.

13                 ******************************

14  Dkt. 61, at 24.

15          Under the terms of the contract, the District refers all medical emergency "911" calls

16  within Clark County to American Medical Response.  The emergency response center is

17  operated by Clark Regional Emergency Services Agency (CRESA).  CRESA is a political

18  subdivision of Clark County, funded by a fee charged, pursuant to the contract, on all ambulance

19  services provided within the District by American Medical Response.  In addition, under the

20  terms of the contract, American Medical Response is entitled to every ambulance call originating

21  in the District regardless whether the request comes through CRESA or not, or whether it is an

22  emergency transport or not.

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 11

1          **VA Contract with Metro West.**  In 2009, Metro West submitted a bid in response to a

2   Request for Proposal from the United States Department of Veterans Affairs (VA) to transport

3   beneficiaries of the VA within the Portland metropolitan area, including beneficiaries located

4   within Clark County.  Dkt. 65.  The VA awarded the contract (VA contract) to Metro West on

5   December 11, 2009, and the parties signed the contract on December 31, 2009.  Dkt. 65, at 3;

6   Dkt. 65-1, at 1-51.

7          In the Statement of Work, the VA contract provides in relevant part as follows:

8          Purpose Statement:  The purpose of this contract is to provide the Ambulance
           services for beneficiaries of the Department of Veterans Affairs Medical centers
9          (VAMC) in Portland, Oregon, East Glisan SBOC and Hillsboro CBOC, and the
           VA Nursing Care Unit in Vancouver, Washington.  The Contractor shall provide
10         all vehicles, personnel, management, supplies, Transportation, equipment and
           reports necessary for all Ambulance services, as identified on the Schedule in
11         Section B.

12   Dkt. 65-1, at 8.

13         In the Veterans Rights section, the VA contract provides in relevant part as follows:

14         (b)  Each veteran will be provided with safe and comfortable transportation to
           and/or from the Medical Center.  The contractor will assume the total
15         responsibility for the veteran's safety and comfort during the entire transfer
           process, from the time the Contractor's staff reaches the veteran, through the
16         loading and unloading of the veteran into the vehicle, and until the time the
           veteran is properly delivered to the professional staff of the medical Center or
17         other final destination.

18   Dkt. 65-1, at 20.

19         The VA contract requires that all Metro West ambulance services for Advanced Life

20   Support services "for Portland,  Oregon and Vancouver, Washington, East Glisan and Hillsboro

21   CBOCs shall be in accordance with current Oregon and Washington State laws and regulations".

22   Dkt. 92, at 5.

23         The VA contract further provides as follows:

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 12

1

> BLS [Basic Life Support] is defined as services required for non-critical veteran care in which veteran requires an ambulance, staffed in accordance with Washington State laws and regulations governing the certification and licensure of private ambulances....BLS services for Portland, Oregon and Vancouver, Washington, East Glisan and Hillsboro CBOCs shall be staffed and supplied in accordance with current Oregon and Washington State laws and regulations.

2

3

4

Dkt. 92, at 5-6.

5

6
    According to the declaration of J.D. Fuiten, the president and CEO of Metro West, the

7
VA provides Metro West with a service request for a pick-up of a VA beneficiary via the VA's

8
dispatch center; the VA dispatch center provides dispatch directions for the VA beneficiary,

9
regardless of the beneficiary's location; Metro West dispatches an ambulance to the address

10
requested by the VA dispatcher; Metro West bills the VA for the ambulance services requested;

11
and the VA pays the bills.  Dkt. 65, at 5.

12
    **Action by Clark County**.  On July 10, 2010, the Clark County Prosecutor send a letter to

13
Mr. Fuiten, President of Metro West, stating that Metro West violated the EMS Ordinance on

14
June 13, 2010, when it provided ambulance service for a patient being transported from Legacy

15
Salmon Creek Hospital to Portland Veterans Medical Center.  Dkt. 65-2, at 2.

16
    The letter stated as follows:

17

> Based on a June 16th email from your Business Development Director, Erin Miller to Doug Smith-Lee, CRESA's EMS Manager, I understand this was considered a Veterans Administration (VA) call.  To meet the provision that exempts vehicles owned or controlled by the United States government, the ambulance service must: 1) be owned, or under contract with the federal government; and 2) the ambulance call must originate and end on federal property.  Picking up a VA patient outside of federal property (i.e., Vancouver VA Medical Center) doesn't meet this exception.

18

19

20

21
Dkt.65-2, at 2.

22
    The letter further stated that, at the time of the call, Metro West was not licensed to

23
provide ambulance services in Washington, and that "[s]ince the call in question didn't originate

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 13

1    on federal property, Metro West also violated Section 5.48A095 of the EMS Ordinance based on

2    Metro West not being a licensed ambulance service for the State of Washington and the

3    personnel not meeting the Medical Program Director's minimum staffing requirements (Clark

4    County certified paramedic and EMT)".  Dkt. 65-2, at 3.

5                           MOTIONS FOR SUMMARY JUDGMENT

6           The parties have filed four motions for summary judgment.  Dkt. 66 was improperly filed

7    as a separate motion, but is the supporting memorandum for Dkt. 71.

8           1.  Metro West filed a motion for summary judgment (Dkt. 58), requesting that the court

9    declare that (a)  Metro West is entitled to perform under the VA contract, either pursuant to

10   Clark County Code § 5.48A.110(B) or federal preemption, without fear of prosecution by Clark

11   County for alleged violations of the EMS Ordinance; (b) the EMS Ordinance violates the

12   Commerce Clause; and (c) because the EMS Ordinance creates a hybrid restraint of trade by

13   providing American Medical Response with a territorial monopoly, it constitutes a *per se*

14   violation of the Sherman Act.  Dkt. 58.

15          2.  The Clark County defendants filed a motion for partial summary judgment (Dkt. 71)

16   and a memorandum in support of that motion (Dkt. 66), requesting that the court dismiss Metro

17   West's preemption claim and grant injunctive relief requiring Metro West to comply with local

18   and state regulations for non-mandated transports in Clark County.  Dkt. 66, at 17.  It appears

19   that "non-mandated" means "transports other than those that begin and end at VA facilities".

20   Dkt. 66, at 9.  The City of Vancouver joined in the Clark County defendants' motion for

21   summary judgment (Dkt. 74).

22

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 14

1    3.  American Medical Response filed a motion for partial summary judgment (Dkt. 72),

2    requesting that the court dismiss Metro West's antitrust and Commerce Clause claims.  The City

3    of Vancouver joined in American Medical Response's motion for summary judgment (Dkt. 74).

4                                    SUMMARY JUDGMENT STANDARD

5    Summary judgment is proper only if the pleadings, the discovery and disclosure materials

6    on file, and any affidavits show that there is no genuine issue as to any material fact and that the

7    movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

8    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

9    showing on an essential element of a claim in the case on which the nonmoving party has the

10   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

11   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

12   for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

13   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

14   metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

15   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

16   requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

17   *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

18   *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

19   The determination of the existence of a material fact is often a close question.  The court

20   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

21   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

22   *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

23   of the nonmoving party only when the facts specifically attested by that party contradict facts

24

1   specifically attested by the moving party.  The nonmoving party may not merely state that it will

2   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

3   to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

4   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

5   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

6                                                    DISCUSSION

7       **1.  VA Transports**

8              Metro West requests that the court declare that Metro West is entitled to perform under

9   the VA contract, pursuant to the exemption in Clark County Code Section 5.48A.110(B) or on

10  the basis of federal preemption.  Clark County requests that the court grant injunctive relief that

11  requires Metro West to comply with local and state regulations for "non-mandated" transports in

12  Clark County, that is, for transports other than those that begin and end at VA facilities.

13             RCW 36.01.100 provides that a legislative authority of a county may (1) by appropriate

14  legislation; (2) provide for the establishment of a system of ambulance service; (3) award

15  contracts for ambulance services; (4) but may not provide for the establishment of any system

16  which would compete with any existing private system.

17             RCW 35.21.766 provides that a legislative city or town may (1) by appropriate

18  legislation; (2) provide for the establishment of a system of ambulance service; (3) by contract

19  after a call for bids; (4) when the legislative authority determines that the city or town is not

20  adequately served by existing private ambulance service.

21             Clark County established the District.  Clark County adopted the EMS Ordinance.  The

22  City of Vancouver determined that, given the intent of Clark County to award a single source

23  competitive contract for ambulance services, the City of Vancouver would not be adequately

24

served by the existing private ambulance service.  The EMS District followed an open and competitive bid process for contracting for exclusive rights to ambulance services within the EMS District.  The contract was awarded to American Medical Response.  Clark County adopted the EMS Ordinance, which prohibited a person or entity from providing ambulance service for emergency and nonemergency transport of ambulance patients within the District unless under contract to do so with the district.  The EMS Ordinance provided that "Vehicles owned or controlled by the United States government" are exempt from Clark County Code Chapter 5.48A.

Metro West entered into a contract with the VA.  The purpose of this contract was to provide the ambulance services for beneficiaries of the Department of Veterans Affairs Medical centers (VAMC) in Portland, Oregon, East Glisan SBOC and Hillsboro CBOC, and the VA Nursing Care Unit in Vancouver, Washington.

A contract entered into by the United States and another party is controlled by general principles of federal contract law.  *Tanadgusix v. Huber*, 404 F.3d 1201,1205 (9th Cir. 2005). The court construes a contract by reading it as a whole and interpreting each part with reference to the entire contract.  *Id*. The terms of the contract control, regardless of the parties' subjective intentions shown by extrinsic evidence. *Id.* Where there is no ambiguity in the contract, there is no genuine issue of fact. *Id.*

The ambulances operated by Metro West, are "controlled by the United States government" through the VA contract. The VA contract is unambiguous. The VA contract does not restrict or limit the pick-up or drop off of the beneficiaries to transports between VA facilities/hospitals.  The VA contract provides for ambulance services for beneficiaries, not for

1  ambulance services for hospitals.  The VA contract does not restrict where a beneficiary can be

2  picked up or dropped off.

3          American Medical Response argues that Metro West has not provided sufficient

4  information in discovery to show whether the VA authorized, through the VA travel desk,

5  pickups in Clark County; and that the information American Medical Response has shows that

6  Metro West has no corroboration of VA authorization for 694 of the 1644 transports claimed by

7  Metro West in the schedules Metro West provided in discovery.  However, there is nothing to

8  suggest that the pick-ups in Clark County for these 694 transports were not paid for and included

9  in the VA contract, regardless whether those transports were authorized in advance.

10         Because the EMS Ordinance exempts ambulance services provided pursuant to the VA

11  contract from Clark County Chapter 5.48A, Metro West is entitled to a declaration that it is

12  entitled to perform under the VA contract, without fear of prosecution by Clark County for

13  alleged violations of the EMS Ordinance.

14         In light of this conclusion, the court need not address Metro West's argument that the VA

15  contract, pursuant to federal preemption, prohibits Clark County from prosecuting Metro West

16  for violation of the EMS Ordinance.  However, it would not be surprising to learn that the issue

17  of federal preemption was considered by Clark County when the EMS Ordinance, and the

18  exemption in Clark County Code  Section 5.48A.110(B), were drafted and adopted.

19     **2.  Compliance with Licensing Requirements and Regulations**

20         Clark County requests that the court grant injunctive relief, requiring that Metro West

21  comply with local and state regulations for non-mandated transports in Clark County.

22         As discussed above, services performed by Metro West pursuant to the VA contract are

23  exempt from Clark County Chapter 5.48A.

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 18

**Certifications.**  Clark County further maintains that Metro West is in violation of the VA contract because it has not obtained the Clark County certifications required by the VA contract. That is an issue between the VA and Metro West.  Further, Metro West contends that it cannot obtain Clark County certification because Clark County has taken the position that Metro West's personnel may not perform services provided under the VA contract.  The certification is an issue that Clark County should be able to resolve, if necessary, in light of the court's determination that services performed pursuant to the VA contract with Metro West are exempt from Clark County Chapter 5.48A.

**Discovery.**  Both Clark County and American Medical Response West claim that Metro West has refused to provide information in discovery that would show that Metro West is in compliance with the EMS Ordinance.

Metro West is required to comply with state and local regulations. An order of this court that it do so is not necessary or appropriate. According to the deposition of Michael Beaulieu, Metro West declines transports automatically when the transport originates in Clark County, unless the transport is pursuant to the VA contract.  Dkt. 82, at 49.  Clark County contends that Metro West has left flyers in nursing homes in the District, advertising its services.  While that may be true, those flyers could legitimately be used by nursing home residents for the return trip from Oregon.

Finally, the EMS Ordinance provides for criminal penalties.  Using a civil action to attempt to gain information for use in criminal prosecution is not appropriate.

Clark County's request that the court require that Metro West comply with local and state regulations for non-mandated transports in Clark County should be denied.

**3. Antitrust**

1    Metro West requests that the court grant summary judgment, declaring that the EMS

2    Ordinance is invalid under the Supremacy Clause; and that the EMS Ordinance is preempted by

3    the Sherman Antitrust Act, 15 U.S.C. § 1 *et al*., because, through an agreement with American

4    Medical Response, the District has created an artificial territorial monopoly in conflict with

5    federal antitrust policy.  Dkt. 58, at 20.  Metro West maintains that the District is not immune

6    under the state action doctrine because creation of this restraint of trade is not authorized by the

7    enabling statutes.  Dkt. 58, at 20.

8    American Medical Response requests that the court grant summary judgment, dismissing

9    the antitrust claim, contending that the EMS Ordinance is immune from Sherman Act liability

10   based on the doctrine of state action immunity; the EMS Ordinance is not a combination or

11   agreement, which is required for a Sherman Act § 1 claim; Metro West has stated in discovery

12   that analysis under the Rule of Reason does not apply, and has declined to identify or produce

13   evidence of any anticompetitive effects or injuries; Metro West cannot prevail if the court applies

14   the Rule of Reason analysis; the EMS Ordinance does not directly discriminate against interstate

15   commerce and there are no incidental burdens on interstate commerce that are different from

16   burdens imposed on intrastate commerce; and the EMS Ordinance advances legitimate

17   legislative goals and Metro West offers no evidence indicating that those goals favor domestic

18   industry.  Dkt. 72, at 2-3.

19   Under the Sherman Act, "[e]very contract, combination in the form of trust or otherwise,

20   or conspiracy, in restraint of trade or commerce among the several States, or with foreign

21   nations, is declared to be illegal."  15 U.S.C. § 1.  This law applies to local governments. *See*

22   *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 408 (1978).

23

24

1    *In Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court held that the Sherman Act

2    was not intended to apply to acts of the States as sovereigns.  The *Parker* state action exemption

3    to antitrust laws insulates local governments from antitrust liability, provided that the local

4    government demonstrate that it is engaging in the challenged activity pursuant to a clearly

5    expressed state policy. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985).   The

6    statutory provisions must plainly show that the legislature contemplated the kind of action

7    complained of.  *Id*., at 44, citing *Lafayette v. Louisiana Power & Light Co*., *supra*.  An

8    expression of state policy that is sufficient to establish *Parker* immunity is comprised of two

9    elements: The legislature must have authorized the challenged activity, and it must have done so

10   with an intent to displace competition. *See Community Communications Co. v. City of Boulder,*

11   *supra,* 455 U.S. 40, 51–52 (1982); *City of Lafayette v. Louisiana Power & Light Co., 435 U.S. at*

12   415.

13          The EMS Ordinance is an enforcement mechanism for the single franchise contract

14   between Clark County and American Medical Response.

15          The state action immunity doctrine has been applied to single franchise ambulance

16   systems implemented by local governments pursuant to broad state statutory authority to regulate

17   ambulance services.  *See Gold Cross Ambulance Co. v. City of Kansas City*, 705 F.2d 1005 (8th

18   Cir. 1983); *Forest Ambulance Serv. v. Mercy Ambulance*, 952 F.Supp. 296 (E.D. Va. 1997);

19   *Central Ambulance Service, Inc. v. Dallas, 631 F.Supp*. 366, 37 (N.D. Tex. 1986).  *See also Gold*

20   *Cross Ambulance Co. v. City of Kansas City*, 705 F.2d 1005 (8th Cir. 1983)(city's single

21   franchise ambulance system immune from antitrust claims because system was enacted pursuant

22   to statue, and single-franchise system was foreseeable consequence of statute).

23

24

1    State action immunity has been applied in the 9th Circuit to ambulance systems regulated

2    by local governments.  *See Springs Ambulance Service, Inc. v. Rancho Mirage,* 745 F.2d 1270,

3    1273 (9th Cir. 1984)(fire Commission servicing emergency ambulance needs of three cities did

4    not violate antitrust laws because it was enacted pursuant to California statute that provided that

5    "The legislative body of a city may contract for ambulance service to serve the residents of the

6    city as convenience requires"); *Mercy-Peninsula Ambulance, Inc. v. County of San Mateo*, 791

7    F.2d 755, 757 (9th Cir. 1986)(county's regulation of ambulance services upheld when "it is

8    apparent that anti-competitive effects would result from a broad authority to regulate");

9    *Ambulance Service of Reno, Inc. v. Nevada Ambulance Services, Inc*., 819 F.2d 910 (9th Cir.

10   1987)(single franchise ambulance system protected by state action immunity from Sherman Act

11   attacks).  Accord, *A-1 Ambulance Serv. V. County of Monterey*, 90 F.3d 333 (9th Cir.

12   1996)(single franchise ambulance system protected by state action immunity); and *Redwood*

13   *Empire Life Support v. County of Sonoma*, 190 F.3d 949, 950-951 (9th Cir. 1999).  *But see Medic*

14   *Air Cor. v. Air Ambulance Authority*, 843 F.2d 1187 (9th Cir. 1988)(air ambulance service not

15   protected by state action immunity when private provider exceeded authority granted it by local

16   government).

17       In this case, Pursuant to RCW 36.32.480, Clark County created the District. RCW

18   36.01.100 authorizes the legislative authority of any county, by appropriate legislation, to

19   establish a system of ambulance service for the entire county or for portions thereof, and to

20   award contracts for ambulance services.  Clark County established a single franchise system for

21   the District, and awarded the contract, following a competitive bid process, to American Medical

22   Response.  Clark County adopted the EMS Ordinance as an enforcement mechanism for the

23   single provider contract. RCW 36.01.100 restricted a county from providing for the

24

1    establishment of any system which would compete with any existing private system. There is no

2    evidence that Metro West operated as an existing private system, at the time the EMS Ordinance

3    was adopted.  The general grant of authority of RCW 36.01.100 provided the board authority to

4    regulate; it was apparent that anticompetitive acts would result from the broad authority to

5    regulate ambulance systems.  There is no indication that American Medical Response exceeded

6    the authority granted to it by contract.  State action immunity applies to insulate defendants from

7    antitrust allegations against defendants.

8         Metro West argues that the county failed to make adequate findings that the county was

9    not adequately served by existing private ambulance services, and that existing private

10    ambulance services could not expand service on a contract basis, as is required by RCW

11    36.01.095.  This statute does not apply in this case, because Metro West was not an existing

12    private ambulance service at the time the EMS Ordinance was adopted.  Even if Metro West

13    could have been considered an existing private ambulance service, Clark County articulated the

14    inadequacy of the system as it existed, and set forth reasons why expanding the existing services

15    would not work, in the settlement agreement in *Buck Medical Services, inc. v. Clark County*,

16    C91-5229B, and in the Fail Safe Franchise Model Design Rationale of the contract with

17    American Medical Response.

18         State action immunity applies to insulate Clark County and American Medical Response

19    from antitrust claims. It is unclear whether Metro West alleged antitrust claims against the City

20    of Vancouver.  *See* Amended Complaint, Dkt. 28.  Assuming that it did, state action immunity

21    insulates the City of Vancouver from antitrust claims.  The City of Vancouver, pursuant to the

22    authority granted it in RCW 35.21.766, enacted VMC 5.84.015, after adopting Resolution M-

23    2744, which found that private ambulance service in Vancouver would become inadequate under

24

RCW 35.21.766  if the District were served by a single contract EMS provider while the City of Vancouver were served by one of more EMS providers under a different system.

Defendants are protected by state action immunity from Metro West's antitrust claims. The court should deny Metro West's motion for summary judgment as to the antitrust claims, grant American Medical Response's motion for partial summary judgment as to the antitrust claims, and grant the City of Vancouver's joinder in American Medical Response's motion for summary judgment.

### 4.  Commerce Clause

Metro West contends that the EMS Ordinance violates the Commerce Clause because it directly regulates interstate ambulance trips and, therefore, interstate commerce; it discriminates against interstate commerce by creating a private monopoly; and it favors local economic interests in lowering the cost of emergency ambulance services at the expense of out of state consumers of ambulance services.  Dkt. 58, at 4.

American Medical Response contends that the EMS Ordinance does not favor local business nor discriminate against interstate commerce because it does not directly regulate interstate commerce; does not create a private monopoly; does not favor local interests; does not discriminate against interstate commerce; and does not impose a burden that falls uniquely on interstate commerce.  Dkt. 79, at 7-15.

In reviewing challenges to local regulations under the Commerce Clause, the court follows a two-tiered approach:

> [1] When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 466 (9ᵗʰ Cir. 2001), citing

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,* 476 U.S. 573, 579 (1986); *see also*

*NCAA v. Miller,* 10 F.3d 633, 638 (9th Cir.1993). The "central rationale" of the dormant

Commerce Clause "is to prohibit state or municipal laws whose object is local economic

protectionism, laws that would excite those jealousies and retaliatory measures the Constitution

was designed to prevent." *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d at 466,

citing *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994).

**Per Se Violation of Commerce Clause.**  In order to determine whether the EMS

Ordinance is a *per se* violation of the Commerce Clause, the court asks whether the ordinance

directly regulates interstate commerce; whether the ordinance discriminates against interstate

commerce; or whether the ordinance favors in-state economic interests over out-of-state

economic interests.  *See Healy v. Beer Institute,* 491 U.S. 324, 337 n. 14 (1989) (quoting *Brown-*

*Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S at 579).

   *Directly Regulates Interstate Commerce.* Metro West contends that the EMS

Ordinance directly regulates commerce by targeting interstate ambulance trips.  Metro West

contends that a significant proportion of ambulance trips originating in the District are destined

for Oregon, within a 30-mile radius.  Metro West also contends that Oregon health care

providers who could, and arguably would, contract with Metro West for ambulance services

originating in Clark County cannot do so because of the EMS Ordinance.  The critical inquiry is

whether the practical effect of the regulation is to control conduct beyond the boundaries of the

State. *See Healy v. Beer Institute,* 491 U.S. at 336, citing *Brown-Forman,* 476 U.S., at 579.

1    The EMS Ordinance does not govern activities that take place wholly outside of

2  Washington State borders. The EMS Ordinance applies only to those transports originating in

3  Washington, even if those transports terminate in Oregon. Further, the EMS Ordinance does not

4  interfere with any legitimate regulatory scheme that Oregon might adopt to regulate ambulance

5  services in Oregon, since the single franchise contract/EMS Ordinance does not purport to

6  control any transports that originate in Oregon.

7    *Discriminates against Interstate Commerce.*  The single-franchise contract

8  between Clark County and American Medical Response did not discriminate against any out of

9  state company or entity during the competitive bid process. In fact, the record shows that both

10 Metro West and American Medical Response are Oregon companies. Further, the EMS

11 Ordinance applies to all ambulance services, in-state or out-of-state, that were not awarded the

12 single-franchise contract.  The EMS Ordinance does not discriminate against Interstate

13 Commerce.

14    *Favors In-state over Out-of-state Interests*.  The single-franchise contract was

15 awarded without regard to whether the winner of the competitive bid process was a Washington

16 company or an out-of-state company.  The EMS Ordinance is an enforcement mechanism related

17 to the single franchise contract.  Metro West argues that an Oregon hospital/health system wishes

18 to contract with Metro West, but is unable to do so because of the EMS Ordinance.  That

19 argument is speculative at best.  However, even assuming that that is true, the EMS Ordinance

20 applies equally to a Washington hospital/health system that wishes to contract for ambulance

21 services.  The EMS Ordinance does not favor in-state over out-of-state interests.

22    The record shows that the EMS Ordinance is not a *per se* violation of the Commerce

23 Clause.

24

**Indirect Effects on Interstate Commerce.** If the EMS Ordinance has only indirect effects on interstate commerce, and it regulates evenhandedly, the court balances whether the burden on interstate commerce clearly exceeds the local benefits. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970).

A statute that regulates interstate and intrastate commerce even-handedly will only be declared unconstitutional if the burdens of the statute so outweigh the putative benefits as to make the statute unreasonable or irrational. *Alaska Airlines, Inc. v. Long Beach*, 951 F.2d 977, 983 (9th Cir. 1992).

In this case, the County found that the single-franchise system assured higher quality care at lower cost. The single-franchise contract was awarded following a competitive bid process, in which both Metro West and American Medical Response participated. The single-franchise system has been shown to reduce costs and improve quality of service. Dkt. 68, and Dkt. 73, at 104-107. The local benefits of a single-franchise system are significant.

Metro West contends that the single-franchise system is a mechanism that provides funding for CRESA, and that Oregon residents are forced by the single-franchise system to shoulder some of the cost of funding that local Washington entity.

While some Oregon residents may be picked up by ambulance within the District, and while some of the fees those services may be used to fund CRESA, this is, at most, a minor burden to interstate commerce, and does not clearly exceed the significant local benefits of the single-franchise system. Metro West has not shown that the burden on interstate commerce of the single-franchise system, and the EMS Ordinance that enforces that system, clearly exceed the local benefits.

1    The court should deny Metro West's motion for summary judgment as to the Commerce

2    Clause claim, American Medical Response's motion for partial summary judgment as to the

3    Commerce Clause claims, and grant the City of Vancouver's joinder in American Medical

4    Response's motion for partial summary judgment.

5        Accordingly, it is hereby **ORDERED** that:

6        1.  Plaintiff Metro West Ambulance's Motion for Summary Judgment (Dkt. 58) is

7    **GRANTED IN PART AND DENIED IN PART** as follows: The motion is **GRANTED** with

8    regard to Metro West's motion for declaratory and injunctive relief. Metro West is entitled to

9    perform ambulance services that are included in and covered by the VA contract, without fear of

10   prosecution by Clark County for alleged violations of the EMS Ordinance, Clark County Code

11   Section 5.48A.025. The motion is **DENIED** in all other respects.

12       2.  Clark County's Motion for Partial Summary Judgment (Dkt. 71 and 66) is **DENIED.**

13   The City of Vancouver joined in Clark County's Motion for Partial Summary Judgment; that

14   motion (Dkt. 74) is **DENIED**.  Clark County's counterclaim, requesting a permanent injunction

15   enjoining Metro West from providing non-emergency ambulance service within the regulated

16   service area of Clark County, without complying with the Clark County Code, is **DISMISSED**.

17       3.  American Medical Response Northwest, Inc.'s Motion for Partial Summary Judgment

18   (Dkt. 72) is **GRANTED**.  The City of Vancouver's joinder in that motion (Dkt. 74) is

19   **GRANTED**.  Metro West's claims that the EMS Ordinance, Clark County Code Section

20   5.48A.025, violate antitrust laws and the Commerce Clause are **DISMISSED**.

21       4.  This case is **DISMISSED**.

22       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

23   to any party appearing *pro se* at said party's last known address.

24

1    Dated this 22nd day of December, 2011.

2

3    _____

4    ROBERT J. BRYAN
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 29